THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 20 CR 30166-SPM-02 |
| | ) | | |
| MATISSIA S. HOLT, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## **STIPULATION OF FACTS**

Comes now Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, through Scott A. Verseman, Assistant U.S. Attorney for this District and herewith enter into the following Stipulation of Facts with the Defendant, Matissia S. Holt, represented by her attorney, Gregory N. Smith, pertaining to the conduct of the Defendant charged in the Indictment in this case and the relevant conduct of the Defendant within the scope of U.S.S.G. § 1B1.3.

1.      Defendant Holt is the wife of co-defendant Emmitt T. Tiner.

2.      From at least April 26, 2016, through December 23, 2019, Defendant Holt knowingly engaged in a scheme to defraud the Illinois Home Services Program, and to obtain money under the custody and control of the Illinois Home Services Program by means of materially false and fraudulent pretenses, representations, and promises.

3.      The Illinois Department of Human Services ("IDHS") operated a program known as the Home Services Program. This program provided services to low income individuals with severe disabilities so they could remain in their homes and remain as independent as possible.

4.     One of the Homes Services Programs was known as the Personal Assistant program.   Personal Assistants provided assistance with household tasks and personal care. Personal Assistants were selected and supervised by the disabled person.

5.     Funding for the Illinois Home Services Program, including the Personal Assistant program, was provided by the federal government, through the United States Department of Health and Human Services ("HHS").   The program was jointly funded, with one half paid by HHS and the other half paid by the State of Illinois.   The Illinois Home Services Program was a health care benefit program, as defined by Title 18, United States Code, Section 24(b).

6.     The Illinois Personal Assistant program had certain financial eligibility criteria.   To be eligible, applicants who were single could not have more than a certain amount of assets, excluding their personal residence and one vehicle.   Married applicants were not entitled to have more than a certain higher amount in assets, again excluding their residence and one vehicle.

7.     Each year, applicants/recipients of Personal Assistant benefits were required to sign a Home Services Program Financial Data Sheet.   On this form, the applicants/recipients were required to list their assets, including savings accounts, checking accounts, and cash on hand.   In addition, applicants/recipients were required to certify whether they had transferred assets to another party within 36 months preceding their application.

8.     Each year, an IDHS Rehabilitation Counselor performed an assessment of each applicant/recipient.   During this assessment, the counselor determined the level of assistance that the applicant/recipient required in performing his or her household tasks and providing for his or her personal care.   This assessment then determined the number of Personal Assistant hours for which IDHS would pay.

9.     Personal Assistants were only permitted to be paid for hours worked when the applicant/recipient was physically present in his or her home.

10.     At the direction of co-defendant Tiner, Defendant Holt applied to the Illinois Home Services Program to be a Personal Assistant for Tiner.  At the time she submitted this application, Defendant knew that Tiner did not require the services of a Personal Assistant.  Defendant's application to be Tiner's Personal Assistant was approved on approximately April 26, 2016. Defendant participated in the program until approximately December 3, 2019.

11.     For purposes of defrauding the Illinois Home Services Program, Defendant Holt routinely signed and caused to be submitted to the program "Home Services Program Time Sheets" on which she falsely certified that she had provided Personal Assistant service to co-defendant Tiner on dates when Tiner was not present at his residence.  As charged in Count Twenty-Two of the indictment, on approximately March 15, 2017, Defendant signed and caused to be submitted to the Home Services Program a time sheet claiming five hours of personal assistant work on March 11, 2017, when she knew Tiner was on a gambling trip at the Ameristar Casino in East Chicago, Indiana, on that date.  Defendant also signed and caused to be submitted the following additional time sheets for personal assistant work on dates when she knew Tiner was on gambling trips in East Chicago, Indiana:  (a) time sheet signed April 15, 2017 – claiming 5 hours of work on April 7, 2017; (b) time sheet signed May 15, 2017 – claiming 5 hours work on May 11, 2017; (c) time sheet signed May 31, 2017 – claiming 4 hours of work on May 25, 2017; (d) time sheet signed June 30, 2017 – claiming 6 hours on June 25, 2017; (e) time sheet signed October 1, 2017 – claiming 5 hours of work on September 24, 2017; and (f) time sheet signed November 16, 2017 – claiming 5 ½ hours work on November 4, 2017.   All of the Home Service Program Time Sheets referenced in this paragraph were signed and submitted in St. Clair County, Illinois.

3

12.     On December 16, 2017, Defendant Holt knowingly signed a Home Services Program Time Sheet which falsely stated that she had provided Personal Assistant services for co-defendant Tiner on the dates of December 12, 2017, through December 15, 2017.  As Defendant knew, she was hospitalized during that time period and did not provide any Personal Assistant services on those dates.  This time sheet was submitted in St. Clair County, Illinois.

13.     On January 1, 2018, Defendant Holt knowingly signed a Home Services Program Time Sheet which falsely stated that she had provided Personal Assistant services for co-defendant Tiner on the dates of December 16, 2017, through December 29, 2017.  As Defendant knew, she was hospitalized during that time period and did not provide any Personal Assistant services on those dates.  This time sheet was submitted in St. Clair County, Illinois.

14.     Defendant Holt was present on several occasions when an IDHS Rehabilitation Counselor performed an assessment of Tiner.  Defendant participated with Tiner in deceiving the Counsellor regarding Tiner's need for Personal Assistant services.  Defendant did not correct Tiner when he falsely told the Counsellor that he used a wheelchair to move around, that he was unable to walk, and that he was unable to drive.

15.     As charged in Count Forty, Defendant Holt knowingly engaged in money laundering on behalf of co-defendant Tiner.  Specifically, Holt was aware that Tiner was engaged in a mail fraud scheme in which he was defrauding an individual with the initials R.G.  She was further aware that Tiner was extorting money from R.G.  Knowing this, Defendant engaged in financial transactions affecting interstate commerce which involved the proceeds of Tiner's mail fraud and extortion offenses.  Specifically, Defendant knowingly endorsed and deposited cashier's checks from R.G., payable to Defendant, which Defendant knew to be proceeds of the mail fraud and extortion.  Defendant further knew that Tiner had caused these cashier's checks to be made

4

payable to her in order to conceal and disguise the nature, location, ownership, and control of these illegal proceeds. Specifically, as charged in Count Forty, on December 13, 2018, Defendant endorsed, and deposited into an account in her name at U.S. Bank, a cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $160,000.

16.     Defendant also endorsed and deposited the following cashier's checks constituting mail fraud and extortion proceeds on the following dates: (a) January 30, 2019 – Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $110,000, deposited into an account in Holt's name at Associated Bank; (b) February 7, 2019 – Cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $50,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $25,000, deposited into an account in Holt's name at Associated Bank; (c) February 15, 2019 – Cashier's check, drawn on Providence Bank, payable to Matissia Holt, in the amount of $111,000, deposited into an account in Holt's name at Associated Bank; (d) March 5, 2019 – Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $111,000, deposited into an account in Holt's name at Associated Bank; (e) March 19, 2019 – Cashier's check, drawn on Providence Bank, payable to Matissia Holt, in the amount of $111,000, deposited into an account in Holt's name at Associated Bank; (f) April 3, 2019 – Cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $118,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Providence Bank, payable to Matissia Holt, in the amount of $42,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $42,000, deposited into an account in Holt's name at Associated Bank; (g) May 1, 2016 – Cashier's check, drawn on First County Bank, payable to Matissia Holt,

in the amount of $100,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Providence Bank, payable to Matissia Holt, in the amount of $75,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $75,000, deposited into an account in Holt's name at Associated Bank; (h) May 28, 2019 – Cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $100,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Providence Bank, payable to Matissia Holt, in the amount of $75,000, deposited into an account in Holt's name at Associated Bank and Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $75,000, deposited into an account in Holt's name at Associated Bank; (i) August 15, 2019 – Cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $300,000, deposited into an account in Holt's name at Regions Bank; (j) October 22, 2019 – Cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $375,000, deposited into an account in Holt's name at Regions Bank; and (k) December 2, 2019 – Cashier's check, drawn on First County Bank, payable to Matissia Holt, in the amount of $50,000, deposited into an account in Holt's name at Regions Bank and Cashier's check, drawn on Providence Bank, payable to Matissia Holt, in the amount of $25,000, deposited into an account in Holt's name at Regions Bank and Cashier's check, drawn on Commerce Bank, payable to Matissia Holt, in the amount of $25,000, deposited into an account in Holt's name at Regions Bank. The financial transactions referenced in this paragraph were conducted in St. Clair County, Illinois.

17.     As charged in Count Fifty Two, Defendant Holt knowingly engaged in a monetary transaction through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000. As Defendant knew, the money involved in this

transaction was derived from co-defendant's mail fraud scheme and extortion offenses. Specifically, on February 8, 2019, Defendant engaged in a wire transfer of $366,991.91, from the Associated Bank account in the name of Matissia Holt, to First American Title Insurance Company, for the purchase of 210 Knollhaven Trail in O'Fallon, Illinois. This monetary transaction took place in St. Clair County, Illinois.

18. Defendant also engaged in the following additional monetary transactions through financial institutions, affecting interstate commerce in criminally derived property of a value greater than $10,000: (a) February 19, 2019 – the writing of check number 1002 in the amount of $39,319.95, from the Associated Bank account in the name of HOLT, to Jack Schmitt Cadillac, for the purchase of 2019 Cadillac Escalade; and (b) June 7, 2019 – a wire transfer of $160,290.61, from the Associated Bank account in the name of Matissia Holt, to First American Title Insurance Company, for the purchase of a lot located at 1405 Pausch Road, in O'Fallon, Illinois.

19. Defendant agrees that the following items constitute proceeds of the fraud and extortion scheme alleged in the indictment and are therefore forfeitable to the United States: (a) Real property located at 210 Knollhaven Trail, O'Fallon, St. Clair County, Illinois, and all attachments, improvements, and appurtenances thereto; (b) Real property located at 1405 Pausch Road, O'Fallon, St. Clair County, Illinois, and all attachments, improvements, and appurtenances thereto; (c) One 2019 Cadillac Escalade, VIN: 1GYS4KKJ7KR254957, with all accessories, attachments, and components thereon; (d) One 2020 Ford F350 Crew Cab XLT, VIN: 1FT8W3B64LEC41202, with all accessories, attachments, and components thereon; (e) One 1962 Chevrolet Impala, VIN: 21869F279747, with all accessories, attachments, and components thereon; (f) All funds seized on or about November 19, 2020, from Regions Bank account

xxxxx4577 in the name of Matissia Holt; and (g) All funds seized on or about November 19, 2020, from Scott Credit Union account xxx8198 in the name of Matissia Holt.

    20.    Defendant further agrees that a forfeiture judgment should be entered against her in the amount of the $2,155,000, which is the amount of the mail fraud and extortion proceeds which she laundered for co-defendant Tiner.

SO STIPULATED:

_____
MATISSIA S. HOLT
Defendant

_____
GREGORY N. SMITH
Attorney for Defendant

Date: _____9/2/21_____

STEVEN D. WEINHOEFT
United States Attorney

_____
SCOTT A. VERSEMAN
Assistant United States Attorney

Date: _____Sept. 2, 2021_____

8